■ LIZZA & SONS, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 54539.)—Appeal from a judgment, entered July 14, 1975, upon a decision of the Court of Claims. The notice of claim contains three causes of action, and, on this appeal, claimant seeks damages only under the second cause of action for breach of contract for nonpayment for services performed under contract item designated Item 76X. The contract was entered into on October 27, 1966, and involved certain highway construction and improvement of Deer Park Avenue in Suffolk County. Construction was commenced on November 8, 1966, and accepted by the State on August 25, 1970. The project was divided into two sections. Section 3 began at Montauk Highway, an intersecting road running east and west, and ran north a distance of 2.88 miles to the Southern State Parkway. The contract called for construction of a four-lane divided highway with appurtenant structures such as bridges and ramps. This construction was entirely on a new location, there being no

pre-existing public road at the same site. At its northern end, section 3 tied into a recently constructed but existing portion of Deer Park Avenue creating a gap in the contract work until the beginning of section 2. Section 2 began at Lake Avenue and continued in a northerly direction for 4.63 miles. There was already an existing two-lane highway, 20 feet wide at or near the location of the section 2 work. Section 2 was to be widened to a four-lane road with 10-foot shoulders and a center mall. Under the terms of the agreement, claimant was to perform the widening and reconstruction of section 2 while traffic continued to operate over that section, without any interruption of traffic. This appeal relates to two provisions of the contract, Items 76S and 76X. These items are concerned with reimbursement by the State for claimant's expenses in keeping the highway open during construction, and after completion, but prior to acceptance. Under Item 76S of the contract, claimant was paid a lump sum of $250,000 for the maintenance of traffic over specified parts of each section. This included part of section 3 and all of section 2. Under Item 76X claimant was to be paid a per unit amount if the State directed it to open segments of road prior to acceptance of the contract. The provision of Item 76X of this contract with respect to which claimant contends the State breached the contract, states, in part, as follows: "Under this item the Contractor shall maintain traffic and protect the public from damage to person and property whenever directed, in writing, by the District Engineer to open to public traffic any portion of new permanent mainline pavement or structures on new location or any portion of new permanent mainline pavement substantially on old location on which public traffic is not maintained during construction under Item 76. The Contractor shall also maintain traffic and protect the public from damage to person and property on any connector or ramp used by such traffic." Pursuant to this item, the State paid claimant $25,450, and the Court of Claims increased this amount by $12,475 by adding the period from May 31, 1970 until the date of acceptance of the contract by the State of August 25, 1970. Claimant seeks additional damages for expenses under Item 76X for section 2 in the sum of $254,460, and for section 3 in the sum of $25,813.50. On November 14, 1967, the State ordered the new pavement of section 2 opened to traffic which was accomplished piecemeal, to wit, 2.4 miles on December 6, 1967, 1.7 miles on December 13, 1967, and 0.2 mile on April 1, 1968. On October 16, 1969, the State ordered the new pavement of section 3 opened to traffic, which section was opened on December 2, 1969. The bid proposal called for a bid under Items 76S and 76X as to the amount of money the contractor was to be paid for the additional costs on sections 2 and 3 for expenses claimant would receive as a result of keeping section 2 and portions of section 3 open to traffic while road construction was in progress, and until the State accepted the work. Item 76S related to section 2 of the highway, and portions of section 3 for compensation for public use of the highway during construction, and claimant's bid for such expense was $250,000 which was paid to claimant by the State. Under Item 76X, claimant was to be paid a per unit amount of $15 per lane mile day, if the State directed it to open completed segments of new roadway prior to acceptance of the work by the State. This item was to apply (a) to permanent mainline pavement or structures on new location, or (b) to permanent mainline pavement substantially on old location, on which public traffic was not maintained under Item 76S. Claimant's main contention is that it is entitled to be paid under Item 76X for all of section 2. Under its terms, 76X did not apply to pre-existing pavement locations on which public traffic was maintained during construction. The record shows that the work on section

2 consisted of widening the present Deer Park Avenue to four lanes, and that this portion of the contract site was not closed to traffic during construction. Thus, by the clear language of Item 76X, it could not apply to section 2. Testimony of claimant's vice-president revealed that claimant was fully aware it would have to maintain traffic on section 2 during construction, and entered the contract with the understanding that this expense would be covered by the lump sum amount of Item 76S. He stated in reference to Item 76S that "We had determined that for the entire length of the job, we would have responsibilities under Item 76S." Additionally, less than three weeks after the State directed claimant to open section 2, the State advised claimant, by letter, that the provisions of Item 76X applied only to section 3, and that it was not the State's intent to make payment under Item 76X for section 2. The Court of Claims determined that claimant was not entitled to any payment under Item 76X for section 2. The court stated as follows: "Dealing first with Section 2, we find all maintenance thereof to be covered by item 76S. The contract plans clearly show it was contemplated that parts of all four new lanes would be opened to traffic during construction. It was also shown that item 76X was not earmarked for Section 2 and that item 76S was (see Exh. 4, Sheet 18). Further, the State specification for 76S explicitly gave the State the right to open new pavement under this item prior to acceptance (see Exh. 6, p. 488, para. [i]). The obvious intent and design of the contract was for 76S to cover the maintenance of specified pre-existing roadways and the new pavement segments which replaced them. 76X was to cover any other segments of new pavement opened prior to acceptance, and all of such segments were in Section 3. The contract, apparently by design, incorporated all such segments into 76S by specific reference. Thus the only fair and reasonable interpretation of 'permanent mainline pavement or structures on new location' is those segments of roadway which were not replacing pre-existing roadways covered by 76S. Section 2 was completely covered by 76S and thus claimant is not entitled to any payment under 76X therefor." The Court of Claims found that the table for estimated quantities set forth in the actual plans showed a quantity of zero on the line for Item 76X for section 2, and that the entire roadway in section 2 was constructed in stages with traffic maintained under Item 76 which was incorporated into Item 76S. We agree with these findings. Claimant next contends that it is entitled to payment under Item 76X for the Montauk Highway portion of section 3. This part of the project was a road which ran east to west at the southerly beginning of section 3, forming an intersection with Deer Park Avenue. The Court of Claims held the Montauk Highway was to be "under traffic" and that the opening of new lanes of pavement was specifically covered under the terms of Item 76S. Claimant's final point is that the payment made under Item 76X for section 3 was inadequate in that it failed to include compensation for maintenance of acceleration and deceleration lanes which ran parallel to the main highway and led to and from exit and entrance ramps. The Court of Claims reasoned that these additional lanes were not part of the "mainline pavement" but rather were "connectors" within the meaning of Item 76X, and thus not entitled to reimbursement for maintenance. This construction of the contract terms is more reasonable than claimant's interpretation and should be upheld. It should be noted as the Court of Claims pointed out in its decision that the original notice of claim and bill of particulars did not include any damages for section 3. The Court of Claims permitted the claim to be amended at trial to include damages for section 3 set forth in claimant's Exhibit No. 39. The Court of Claims stated that

"however, the fact they were alleged in such a belated manner, raises questions as to the genuineness of claimant's underlying interpretation." We have a case where a contractor in an attempt to manipulate specifications is trying to obtain a double payment for something for which it has already been fairly and justly compensated in accordance with the terms of the contract. Claimant's claim for extra compensation was part of and merged in the cost of performance under the terms of the contract, and the claimant is not entitled to any additional payment. The Court of Claims correctly interpreted the contract between the parties. Judgment affirmed, without costs. Kane, J. P., Staley, Jr., Main, Larkin and Herlihy, JJ., concur.